In the Matter of the Transfer Tax upon the Estate of GEORGE W. VANDERBILT, Deceased.

EDITH STUYVESANT VANDERBILT and WILLIAM K. VANDER-BILT, as Executrix and Executor, etc., of GEORGE W. VANDERBILT, Deceased, Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

First Department, May 5, 1919.

**Tax — transfer tax — appraisal of personal property — jurisdiction to tax real property in foreign State — deduction for notes and interest thereon secured by real property devised to widow.**

In appraising the personal property of a decedent for the purpose of assessing the transfer tax all valid debts owing by him are required to be deducted.

The courts of this State have no jurisdiction to impose a tax with respect to real estate in other jurisdictions.

Where the estate of a resident testator was primarily liable for the payment of notes held by a trust company in Washington, D. C., and secured by real property in said city which had been devised by the testator to his wife, said notes with interest constitute debts which should be deducted in determining the net value of the personal property subject to a transfer tax.

APPEAL by Edith Stuyvesant Vanderbilt and another, as executors, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 18th day of November, 1918, reversing an order fixing the transfer tax herein and remitting the report of the appraiser to him for correction.

*Roy C. Gasser* of counsel [*Henry B. Anderson* with him on the brief; *Anderson & Anderson*, attorneys], for the appellants.

· *Schuyler C. Carlton* of counsel [*Lafayette B. Gleason*, attorney], for the respondent.

LAUGHLIN, J.:

The testator, who was domiciled in the State of New York, died on the 6th day of March, 1914, leaving a last will and testament, which was duly admitted to probate by the Surrogate's Court, New York county, on the twenty-fifth day of that month, and letters testamentary were thereupon issued to the appellants, as executor and executrix. The appraiser, who was duly appointed on the 29th day of September, 1916, reported that the testator left only personal property within this jurisdiction and that the net value thereof, less funeral and administration expenses, debts and commissions, was $929,740.98, of which the widow of the testator took $693,150.81, which amount, less $5,000, was taxable.

The American Security and Trust Company of Washington, D. C., held fifteen promissory notes of the testator, aggregating $65,000. The appraiser allowed, in the deduction for debts, the face value of these notes with accrued interest. The notes were secured by a trust deed of premises owned by the testator, and known as No. 1612 K Street (N. W.), Washington, D. C. On the appeal of the Comptroller, the surrogate reversed the appraisal in so far as it allowed a deduction of these notes and interest. (104 Misc. Rep. 511.) The sole point presented by the appeal is whether the notes and interest were properly deducted. In appraising the personal property of a decedent, for the purpose of assessing the transfer tax, all valid debts owing by him are required to be deducted, for it is only on the *net* value of the property transferred that the tax is imposed. (*Matter of Westurn*, 152 N. Y. 93. See, also, *Matter of Gihon*, 169 id. 443.) Section 250 of the Real Property Law (Consol. Laws, chap. 50; Laws of 1909, chap. 52) provides, among other things, as follows: "Where real property, subject to a mortgage executed by any ancestor or testator, descends to an heir, or passes to a devisee, such heir or devisee must satisfy and discharge the mortgage out of his own prop-

erty, without resorting to the executor or administrator of his ancestor or testator, unless there be an express direction in the will of such testator, that such mortgage be otherwise paid."

The premises in Washington, which were held by the American Security and Trust Company as collateral security for the payment of the notes, were devised to the widow of the testator. The will contains no express direction that the mortgage should be paid otherwise than by being satisfied out of the mortgaged property, for it contains no reference thereto. If the premises were within this jurisdiction it is quite clear that, by virtue of these provisions of the statute, it would be the duty of the widow to pay the notes, at least to the extent of the value of the property mortgaged therefor. (*Ring* v. *Woolley*, 155 App. Div. 817; *Matter of Offerman*, 25 id. 94; *Matter of Sutton*, 3 id. 208; *Matter of Livingston*, 1 id. 568; *Matter of Maresi*, 74 id. 76; *Matter of Skinner*, 106 id. 217.) In other words, the security, if here, would be primarily liable for the payment of the notes; but in that event the widow would be entitled to have the mortgage deducted from the value of the premises in the appraisal thereof for the purpose of assessing the transfer tax. If there was a similar statute in the District of Columbia, the same rule should be applied, and in that event the widow would be protected by having the amount of the mortgage debt, which she would be required to pay, deducted in determining the value of the real estate on which the tax in the District of Columbia would be imposed (See *McCurdy* v. *McCurdy*, 197 Mass. 248), and if there be no similar statute if this indebtedness were not deducted she would be subjected to double taxation provided there be a transfer tax on land left by a decedent in the District of Columbia. But there was no similar statute in the District of Columbia, and it was, in effect, stipulated that there was no law, written or unwritten, in force in the District of Columbia which required an heir or devisee of real property to satisfy or discharge out of his own property any mortgage or deed of trust thereof executed by any ancestor or testator, and that every debt secured by a mortgage or trust deed was, by the law of the District of Columbia, required to be paid by the personal

representatives of the ancestor or testator out of his personal estate, for it was stipulated that an attorney competent to testify would so testify had he been called. Were it not for our statute, which relates only to mortgages on land here, such indebtedness would be payable primarily out of the personalty. (See *Matter of Fox Estate*, 159 Mich. 420, revg. 154 id. 5.) If there be a Transfer Tax Law in the District of Columbia the widow of the testator, therefore, will not be entitled to any deduction from the value of the real estate on account of the mortgage or deed of trust, since the testator left sufficient personal property to pay the same. It does not appear whether there is a transfer tax on real estate left by a decedent in the District of Columbia, but that is quite immaterial for it does not concern us or in any manner affect our right to tax this estate because we have no jurisdiction in any circumstances to impose a tax with respect to real estate in other jurisdictions. In view of the law of the District of Columbia as so stipulated I am of the opinion that if the creditor had resorted to the collateral security for the payment of the note, the widow would have been subrogated to its rights under the notes and could have compelled the payment by the personal representatives of the estate of the testator, for the estate was primarily liable for the payment of the notes and that being so they constituted debts properly deductible in determining the net value of the personal property subject to the transfer tax. In the case at bar, without resorting to the collateral security, the holder of the notes presented them to the personal representatives of the estate by whom they were paid out of the personal property of the testator.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the appraisal as made by the appraiser confirmed, with ten dollars costs.

CLARKE, P. J., SMITH, SHEARN and MERRELL, JJ., concurred.

Order appealed from reversed, with ten dollars costs and disbursements, and order of June 24, 1918, affirmed, with ten dollars costs.